## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Daniel Brown | A#-074-992-221; | ) |
| Vu Tuàn, | A#-060-613-821; | ) |
| Son Lee, | | ) |
| Patel Nisarg, | A#-061-544-218; | ) |
| Jhensy Saillant, | A#-062-280-757; | ) |
| Cipriano Rodriguez, | A#-090-766-958; | ) |
| Pena Jose, | A#-034-205-798; | ) |
| Gilbert Grullom, | A#-090 766 958; | ) |
| Amjad Mohammed, | A#-099-384-130; | ) |
| Hooru Xie, | #-100-005-669; | ) |
| Abel Helb, | #-100-005-267; | ) |
| Darius Kilby, | #-100-005-473; | ) |
| Ofori Xentumi Jeremy, | A#-096-672-758; | ) |
| Navin Singh, | #-100-003-700; | ) |
| Paul Johnson, | #-100-003-706; | ) |
| Ajarhi Roberts, | #-100-005-615; | ) |
| Franciszek Bystron , | A#-097-615-784; | ) |
| Patel Bharatkumar | #-100-005-848; | ) |
| Levon Margaryan | #-100-004-645; | ) |
| Karireddy BharathA | #-100-005-834; | ) |
| Gary Lall | #-100-005-819; | ) |
| Ishmael Kosh | #-100-005-842; | ) |
| Kelechi James | #-100-005-663; | ) |
| George Graham | #-100-005-747; | ) |
| Anthony Wilson | #-100-005-522; | ) |
| Olalekan Abifarin | #-100-005-764; | ) |
| Mohamed Kamara | #-100-005-654; | ) |
| Van H. Nguyen | A#-042-363-518; | ) |
| Herrow  Yahye | #-100-005-177; | ) |
| Jaber Hammouda | #-100-005-796; | ) |
| Jose Ismael Dilone Lyon Rodriguez | #-100-005-702; | ) |
| Plaintiffs, | | ) |
| | | ) |
| v. Angela HOOVER, in her official capacity | | ) |
| as Warden of the Clinton County | | ) |
| Correctional Facility (CCCF); Simona FLORES, | | ) |
|  in her official capacity as Field Office | | ) |
| director for Enforcement and Removal | | ) |

Civil Case No.:

FILED
HARRISBURG, PA

JUN 19 2020

PER _____

DEPUTY CLERK

**Operation in the Philadelphia Field Office**                    )
**of U.S. Immigration and Customs Enforcement (ICE);**            )
**L. Francis CISSNA, in his official capacity as**                )
**Director of the United States Immigration and**                 )
**Customs Enforcement; William BARR;**                            )
**in his official capacity as Attorney General of**               )
**the United States;  Joseph Dunn as Assistant Field**            )
**Director; Jennifer Moon as U.S. DHS/ICE Deputy**                )
**Assistant Director of Health Care Compliance;**                 )
**Kormanic in his individual and official capacity**              )
**as Deputy Warden of CCCF; Gates in his individual**             )
**capacity as Lieutenant at CCCF; Powell in her**                 )
**individual capacity as Lieutenant at CCCF; Probst in**          )
**her individual capacity as Lieutenant at CCCF; and,**           )
**Reynolds whose position is not made known to the**              )
**general population as medical personnel at CCCF**                )
**as Defendants**                                                 )

# MOTION FOR MANDATORY TEMPORARY RESTRAINING ORDER AND INJUNCTION

Civil immigration detainees at CCCF brought this action against department of Homeland Security and Immigration and Customs Enforcement DHS/ICE and Clinton County Correction Facility (CCCF) officials that: Policies and practices related to detainees at CCCF violated their First, Fifth, Eight and Fourteen Amendment rights.

Plaintiffs moves for Temporary Restraining Order (TRO) from this Court to order the responsible parties to take action. Policies and procedures at CCCF prevented: immigration detainees of minority religious groups from practicing their religious faith; hurt their ability to retain counsel and cause their detention to be substantially prolonged; unable to practice personal hygiene; intentional hindrance and retaliation

from exercise of a protected constitutional rights; inadequate food; inadequate drinking water; inadequate and denial of health care; inadequate access to telephone; inadequate law library and denial of access to the courts; denial of self-help as required by DHS/ICE regulation; civil detainees detention not treated as civil; unsanitary conditions; inadequate table and seating; and, extreme excessive condition of confinement and among other things.

## I. STANDARDS

In deciding whether to grant a motion for TRO, courts look to substantially the same factors that apply to a court's decision on whether to issue a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008).

A plaintiff seeking a preliminary injunction generally must show that: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in favor of the plaintiff; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20, 129 S.Ct. 365.

To obtain a mandatory injunction, a plaintiff must "establish that the law and facts *clearly favor* her position, not simply that plaintiff is likely to succeed. A mandatory injunction orders a responsible party to take action. A mandatory injunction goes well beyond simply maintaining the status quo [p]endente lite [and] is particularly disfavored.

In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.

## II. ISSUES PRESENTED FOR REVIEW

Did CCCF failed to meet the standard required by the constitution to provide detention for this Court to order immediate inspection and give CCCF seven days to comply while finding detainees condition of confinement unconstitutional, and in the event, terminate CCCF contract with DHS/ICE where CCCF failed to comply with this Court's order?

## III. FACTS

### A.   EXTREME EXCESSIVE CONDITION OF CONFINEMENT

### (i)   Personal hygiene/ basic human and prisoner's rights

Detainees cannot properly maintain personal hygiene. Unlike other Immigration and Customs Enforcement (ICE) detention Facility that gave out two large bar of bath soaps, a shampoo, proper deodorant and among other items each week, Clinton County Correctional Facility (CCCF) have been refusing to provide detainees with personal hygiene such as soap, deodorant, toothpaste and among other things and instead instructing them to purchase same hygiene from commissary.

This violates the standard under the contract by DHS/ICE and ICE detainees are hindered from performing basis hygiene as required by the constitution. Moreover, ICE permit detainees to bring their personal hygiene from other facilities but upon arrival at CCCF, detainees are not permitted to access those personal hygiene and instructed to purchase same from commissary.

The tee shirts, underwear and socks are not in proper conditions and never new. Most have holes, stains and not properly clean because the have been used for extended periods by other detainees and prisoners who is also serving sentences up to almost 5 years and housed with ICE detainees..

There is no hot water for more than a week during this pandemic. There are bugs and germs flies and constant bad odor in the showers and toilet that never goes away. These areas only get clean once per day at 9:45 pm at night and cleaning products are not of standard to eliminate the odor.. CCCF barber services cost $12 per hair cut and detainees who are indigent cannot get their hair cut. Due to these issues, detainees cannot maintain personal hygiene.

Detainees feet have to touch the bottom bunk mattress when climbing to the top bunk due to the positioning of the steps to enter top bunks that always leave that part of the detainees sheet on the bottom bunk soil from that person shoe. This is unsanitary because people walk around in the Unit and in the toilet areas.

5

**(ii)   Laundry**

All petitioners herein and other similarly situated detained claimed and experience same with the laundry at CCCF. Until recently, the showers were chronically broken since the year of 2019 and at times only two showers were working for 70 persons. They have just recently fixed and it is now four showers to 70 persons. All the washing machines are broken since 2019. Detainees are often seen drying water from the floor that is caused by the broken washing machine.

After the final spin cycle, water still remain in the washing machine and whenever detainees open the washing machine door to retrieve their laundry the water floods out on the floor in the laundry area to the main dorm hallway.

All washing machines are broken in same fashion since 2019. In regard to this issue, detainees have to time the machine, and then turn off the main water line prior to the final spin cycle to avoid flooding the floor with water when doing so still does not guarantee non-flooding. One dryer door is broken and detainees have to use a bin to keep the door closed, while prisoners and ICE detainees have to start and stop another dryer to allow cool down from a burning smell. As a result, opportunities to do laundry cannot properly be maintain since 2019.

This water floods out on the detainees feet and to the floor due to the proximity of the detainees feet to the washing machine when the water do not shut off prior to the

final spin cycle. Brown herein got burned on his feet by hot water recently when he opened the washing machine door and CO who was working the unit witness this event.

Numerous request and grievances have been made to the CCCF Shift Commander, Deputy Wardens and even to the Warden about the washing machines and dryers without any response. As to date, CCCF has brought in 2 commercial washing machines yet to be installed.

**(iii)   Inadequate healthcare denial of access to medical and falsified of detainees medical records**

The medical department at CCCF fell below the standard of norm. Medication is always not available or in short supply for detainees upon upon arrival and medication has been unavailable for some detainees life threatening condition for more than a month. CCCF also either lesser the amount of time per taking each day or cut short of the duration of prescribed medication. Even where medication are prescribed to be mandatory for lifetime, CCCF disregarded and refused to give these medication. Here, CCCF disregarded detainees, health, violated detainees rights and the DHS/ICE regulations under the contractual agreement.

The supervisor of CCCF Medical Staff whose proper name is not known but who identified her name as Reynolds and as the head nurse and supervisor have being manipulating and falsified detainees medical records.   Reynolds also entered into detainees record to minimize the severity of detainees medical complaints, and to let it

appear as if detainees received proper treatment, care and or seen by the doctor when in fact they did not.

Reynolds denied detainees medical treatment such as those who needs pain killer and states same should purchase same from commissary as was done to Saillant, Brown, Ofori-Xentumi Jeremy, Mohammed herein and others.

There are numerous complaints from detainees that Reynolds denied them medical treatment because of their race and the Deputy Warden is aware because those grievances were filed directly to the Deputy warden. These complaints are ignored.

When detainees made request about certain medical issues, Reynolds cause their medical records to appear as if the issue was addressed or remedied when in fact the issue did not and the detainees in this regard either never received an answer to same medical request or was called to medical but was not treated as the record indicated.

Reynolds further manipulated the record to let it appeared as if detainees refused medications when in fact the detainees went for medication and the CCCF medical department do not have the medication available in that the medication run out or unavailable.

Reynolds have been causing detainees to take medications without prescribed by or seen a doctor. In fact, no doctor not within the facility. Reynolds claims the doctor prescribed medication upon sick calls request and among other things when it is

impossible to determine the required medication without blood work presented to a lab when no blood work never done or neither presented to a lab.

Medication have been prescribed without doctor. Many detainees medication changed immediately without doctor's approval upon arrival at CCCF to a different medication other than what they were prescribed by other doctors and taken prior to arrival at CCCF. When detainees start taking these medication, detainees started having some form of effects such as severe stomach pain to dizziness. Detainees filed complaints/grievances about these issues which is always ignored or forward to remedy by medical staff Reynolds who then again denied same.

Whether Reynolds have been directed by CCCF to or the medical contractor/provider to take such action is a question for the government and this court at issue to determine this matter. The Deputy Warden is well aware of Reynolds's conduct and return grievances to detainees without any response pertaining to Reynolds's conduct that were resent multiple times.

CCCF medical staff Reynolds also used ruse not to provide proper medication or treatment to detainees by telling them that CCCF cannot get any medication prescribed until a copy of the detainees medical record come from previous facility. Under these ruse, Reynolds have the detainees signed a ROI, then when detainees do status check, they have been told that the medical Department (Dept) have not received any response.

Meanwhile, the detainees never get treated and denied medical care and these medical record never get received according to CCCF Medical Dept.

It is unclear who held what position in the medical department and these information has not being made to the general population. ICE detainees are treated in a manner that is excessive above the maximum of those in criminal detention.

Usually when detainees are severely ill, unless they call the Inspector General (IG) hot line, no CCCF staff provided care when hospital require. These include two detainees who end up in the hospital that required surgery. One of these incident involve a ICE detainee who were severely ill and laying on the floor in the bathroom for over an hour.

Other ICE detainees call to the attention of Correctional Officer (CO) Weaver who ignored to assist or call medical nor did not even leave from his desk to see what was going on with the detainee. Thereafter Nurse Perry came in the Unit and was handing out medication and was told of the detainee who was sick. At this point nurse Perry call medical and Supervisor Reynolds hanged up the phone on nurse Perry.

Later that day, an ICE detainee called the ICE hot line and action was then taken and that detainee was taken to the hospital for an operation. These incidents are not uncommon at CCCF. Here, CCCF do not train its CO to attend to medical emergencies which is a violation under ICE mandatory requirements contract with detention facilities section 235.3(3)(4) availability of emergency medical care.

CCCF Medical refused to treat ICE detainees with pain killer. Pain killer such as basic aspirin, ibuprofen, Tylenol, are nearly not affordable on commissary due to price hoarding.

Two of these pills cost 65 cents which will cost detainees $60 per month if taken three times per day.  When detainees do get pain killer like those from medical, they only given either two aspirin or two ibuprofen for one time dose and told to make another sick call request for the following day and repeated this action for treatment.

Moreover, there are health code violations because detainees are not properly screen during intake such as doing blood work to run a lab test at the minimum to detect disease. During intake CCCF Medical Dept only asked a list of questionnaire and sent detainees to their assigned Unit.

### 1.    Brown

Brown, 46 years old, suffered from chronic kidney disease and other medical issues. Brown was denied medical treatment by nurse Reynolds. This stemmed from from a April 2020 sick call request. The sick call request related to an obsess infection from which was causing Brown severe pain and needed immediate treatment and he never was seen by a doctor up to that point in time since at CCCF.

This occurred when Reynolds told Brown that Brown's medical record show that Brown have seen the doctor three times starting in December 2019 and two more times prior to April 2020. Brown told Reynolds that the record was falsified. As a result of

Brown's statement, Reynolds denied Brown medical treatment on that specific occasion stating that Brown's statement justified denial of medical treatment. Reynolds, may have forgotten that the law requires that medical personnel must treat every patient the same, whether in or outside of prison and her duty as a medical personnel is to abide by the Department of health and to comply with the issuing authority of her medical license.

Brown have allergies to milk and other dairy products, peanut and beef. Brown do not get any substitute for his milk and diary allergies and been given artificial juice to substitute for milk.

Brown made request to medical to find out why did medical approved artificial juice for his milk substitute and not been given any alternative for his dairy allergies. Brown did not received any response but was told by other medical staffs that Reynolds directed them not to response but to entered it into the record as remedied.

Brown have bad vision and requested for a pair of glasses for many months now and is yet to be seen by an eye doctor and also signed ROI many months ago which is also yet to received.

Brown also been denied substitute medication for his kidney treatment that cause him severe pain periodically. Brown is Dextrocardia Situs Inversus (heart is on the right and organs in reverse) and is required to see a cardiologist and a GI doctor for his heart and gastrointestinal issue due to being Dextrocardia Situs Inversus. Brown have been

denied these treatment even though requested and periodically having issue with digesting food. Here Brown should also be on a special diet that CCCF does not provide.

### 2.    Saillant

Saillant suffered from severe back injuries as a result from excessive force by a York County Prison Correctional Officer (CO). Saillant was taking pain medication while in York County Prison (YCP). After a short period upon arrival at CCCF, Saillant medication was discontinued.

Saillant made numerous request for medication pertaining to his severe back pain which was denied and was told to buy any pain killer he needed from commissary.

Saillant also cannot get proper treatment for his ears infection. CCCF Medical Department (Dept) listed Saillant as refused this medication when he did not refused.

Saillant made request to ICE about these medical issues and those request return with a response that the medication needed must be purchase from commissary. Saillant spoke with an ICE officials in person about this response and ICE officials stated that it was not an ICE official who responded referring to the handwriting not of an ICE official. Here, this is not an isolated incident and CCCF staff acting as if it is ICE responding to these grievances. These mostly occurred when Lieutenant Prosbt work.

Saillant was threaten by Captain Young to be sent to either Pike or York County Prison after filling grievances against Reynolds about denial of medical care and racism.

Saillant have a chess bone that never went back in its original place after a York County Prison Correctional Officer used excessive force against him. Saillant continued having severe chess pain and requested for MRI and pain killer pertaining to his chess was denied by Reynolds.

### 3.    Rodriguez

Rodriguez suffered from knee surgery, severe lower back pain, and when lay down always have blood come up in his mouth and also have hernia.

Since Rodriguez arrived at CCCF he have been denied medical treatment for all of the above even though he had made numerous request. [There are unprofessional level of practice with CCCF medical staff prescribing medicine without any blood work done to first determine the problem.]

Rodriguez was taking medication for all of the above medical problem in the Federal Bureau of Prisons (BOP). These medications were discontinued shortly after his arrival at CCCF. Rodriguez should be still taking these medications but CCCF choose not to provide these medications. Rodriguez like many other ICE detainees signed release paper (ROI) for CCCF to obtain medical record to prove he had these medical conditions that CCCF medical staffs claim they yet to receive.

It is a common occurrence for CCCF staffs not to provide the proper medication or treatment for detainees transferring from another facility that were on medication.

### 4.      Grullon

Grullon suffered from fifty percent main clog main hearty, chronicle diabetes, chronic arthritis, high blood pressure, high cholesterol. He is suffering from dizziness since arrived at CCCF and started taking the medication provided by CCCF medical staff. He made numerous request about these dizziness which remain unmet.

He has been given Tylenol for pain that does not cure his pain and being denied proper medical treatment upon request and nothing has been done to treat his dizziness.

### 5.      Khan

Khan suffered from back pain, shoulder pain and chess pain and was ignored and denied treatment after making numerous request.

### 6.      Mohammed

Mohammed have chest surgery for pancreas tarsus and having chest pain and hernia. Mohammed only be given Tylenol. He need surgery for hernia to get done. CCCF ignored his hernia condition and treatment request.

### 7.      Deron Joe

Deron Joe, 52 years old suffered from hypertension, high cholesterol and other medical conditions. He was transferred from a BOP facility. When at BOP he was prescribed and taking HCT2 (25 MG), Liptor 20 MG, Asprin 81 MG and Amolodipine 5 MG for daily use. Upon arrival at CCCF, his Lipitor was substitute for Atonastatin which unknown to Deron Joe.

These changes cause him to have severe heart burn and dizziness. Reynolds did not state whether the doctor prescribed same here. He made numerous request on this issues and was denied treatment for a substitute medication. More recently, two weeks ago he was call to medical in relation to a sick call request pertaining to same issue. At this medical appointment Reynolds took questionnaire and again he was denied treatment.

Deron Joe also filed complaint against CCCF medical as his record indicated that he was served medication at certain time when in fact he did not. He is not being treated for the dizziness cause by the medication given to him by Reynolds.

### 8.    Ofori-Xentumi Jeremy

Jeremy suffered from migraine and other medical issues that required medication to maintain his immune system. Prior to arriving at CCCF Jeremy was prescribed and taking medication for these issues. At the time Jeremy was brought to CCCF he had these medication with him.

CCCF during intake confiscated these medication and stated that CCCF medical department will provide medication in regard to this matter. CCCF never provide these medication to Jeremy. Jeremy made numerous request about his medical condition and feeling extreme pain and has been denied medical treatment for same.

Jeremy made complaint to ICE that he have been denied medical treatment. In a response hand delivered to Jeremy by ICE officials, Jeremy was instructed to buy the required medication from commissary by ICE officials.

### 9.    Ajarhi Roberts

Roberts went to medical and his blood pressure was up on March 30, 2020 and thereafter in April 2020. Reynolds manipulated the record to let it appear that it was not up at other times thereafter because Roberts request would show the delay in treatment.

### 10.    Blueishvili Giorgo

Giorgi have throat issue and always feel tired and complaint about his loss of smell and requested for medical care. He was told he would see a doctor about his issues that would then able to prescribed the medication. He never seen the doctor and medication was prescribed that cause his stomach severe pain after he started to taking same medication.

Thereafter, he made complaint to medical that same medication caused his stomach severe pain. CCCF medical staff did not give a substitute medication but discontinued Giorgi medication and his medical condition remain unchanged while he still never received any care or treatment for the severe paining resulting from the ineffective and counter productive medication CCCF medical staff gave him.

### 11.   George Graham

Graham is suffering from Lupus and was granted release from a federal judge from the bureau of Prison (BOP due to his imminent threat to COVID-19 and ICE detained him upon release from the BOP. It is mandatory that he take his medication for lupus because of his life threatening immune system.

CCCF medical staff told Graham that CCCF do not have any medication to treat lupus and have been denied this medication.  Since arrived at CCCF some months ago he made complaints to ICE officials who apologized stating that ICE officials are working to get this medication to him.

His attorney also contact CCCF about this issues and he have a doctor in New York who stated that if he is release he can obtain same medication including the Rhumotologist.

Graham medical records was falsified. After numerous complaints about not getting his medication, on June    2020 he was called to medical and was told that his record indicate that he had been refusing his medication. He then speak to Lieutenant (LT) Rash that the medication is unavailable and that Reynolds listed him as refusing. Thereafter, he was told by LT Rash that the Medical Dept said that Graham refused because it is unavailable.

Graham then spoke to ICE officials who told him on that same day that ICE officials were told by CCCF Medical Dept that Graham medication is available but

Graham had been refusing. Here, the record is totally manipulated and falsified to appear that CCCF Medical Dept have Graham's medication and being refused by Graham. These are criminal actions.

Reynolds and CCCF not proving medication with the intent here is an attempted murder. The law requires that when detainees refuse to take medication that are life threatening as here, such detainees must signed a Form with the warning. Here, Graham did not signed any and the record have been falsified while putting and put his life at risk without his knowledge. In fact, all detainees Reynolds claimed to have refused medication never signed any refusal Forms.

### 12.   Patel Bharatkumar

Bharatkumar suffered from back pain and leg pain resulting from an accident. This required constant medication that was prescribed by doctors that he had been taking from other facilities. Since arrived at CCCF he have made numerous sick call request and was denied medication.

After request made and when call to be seen by the CCCF medical staff he was given only 2 Ibuprofen and then told he have to make sick request each day for the same issue which may sometime take a week to get seen again.

It also appear as a sheme either for CCCF or the medical contracting to used ICE detainees to inflate the number of sick call which each cost $9.25. Here, the more sick

call request, the more money accumulate while ICE detainees suffering from severe pain.

**(iv)   Denial and violation of detainees right to Practice of Religion**

CCCF house a diverse group of detainees who have various religious faith. Only Muslim and Christian religious faith are permitted to practice at CCCF. Religious Groups such as Rastafarian, Hindu, Buddhist and among others which are minority religious groups are not permitted to practice nor provide accommodation.

Numerous grievances have been filed in this regard that either being ignored or give the detainee the run around until the detainee either release or transfer to another facility. This usually happen after the chaplain use ambiguous languages as a ruse to elude these religious group faith request to practice which follow by request to Step Two and Three grievances that never resolved.

### (a)   Rastafarian

Daniel Brown, Jose Pena, Roberts and others not mentioned herein confined at CCCF are Rastafarian. CCCF do not provide any religious accommodation for their religious faith, practices nor need. In fact Brown and other filed grievances in regard to their religious faith since 2019 without any resolution.

In this regard, CCCF knowingly that it have been violating these groups religious faith under their First Amendment rights of the U.S. constitution, and have no space for accommodating same, so it choose not to resolute these issues. Brown, Pena and other

Rastafarians have been detained at CCCF since 2019 without able to practice their religion while Christian and Muslims did.

### (b)   Buddhist

Vu Tuan, Son Lee and others not mentioned herein confined at CCCF are Buddhist. There is no accommodation at CCCF to practice their religious faith and need. Thus CCCF is in violation of this religious group First Amendment rights similar to the Rastafarian.

### (c)   Hindu

Patel Nisarg, Patel Bharatkumar, Karireddy Bharath, gary Lall and others not mentioned herein confined at CCCF are Hindu. There is no accommodation at CCCF to practice their religious faith and need. Thus CCCF is in violation of this religious group First Amendment rights similar to the Rastafarian and the Buddhist.

### (d)   Muslims

Mohamed Kamara  is a Muslim and requested for religious diet which is known on the federal level as the Kosher diet. CCCF do not provide this diet and his religious rights have been violated on this level.

## (v)   Inadequate Law Library and denial of access to court cause detainees detention to be substantially prolonged

It is well established in this Court the capacity of CCCF by ICE's declarations during this pandemic. There is only one law library with only one computer with Westlaw that detainees can use to search case laws and one ICE computer with

Immigration cases that never update and also not working properly that served the entire CCCF. Both have to be used interchangeable. In this regard, only one computer serving almost two hundred detainees.

In order for detainees to gain access to the law library, they must made written request which goes by schedule. When detainees approved to enter the law he/she is given only two hours. The hours of the law library are from 8 AM to 4 PM and from 5 PM to 9 PM. Schedule runs as follow: 8 AM-10AM; 10 AM-12 Noon; 12 Noon-1400; 1400-1600; 1700-1900; and 1900-2100.

Given these schedule per person only 6 person out of the entire CCCF population can access the law library each day and these schedule usually double book and some detainees never make it to the law library as requested for more than a month. The law Library policy cause denial of access to court and detainees not permitted the amount of time required under the contract with the ICE 2011 Operations Manual ICE Performance-Based National Detention Standards ("PBNDS").

There is no way detainees ever get the minimal time in the law library as required by those regulations. Some detainees may not get no time in the law library because sometimes the schedule has been book for the entire month.

Detainees never get proper copies. These copies came out gray with faded words. Detainees had been told that the copy machine set to gray to save ink because ink toner for same copy machine is very expensive. When detainees recopied the copies that

made, these set of copy cannot be properly read and usually cause burden on the detainees to present material to Court.

The directory for courts names and address across the country is not provided by the law library nor by the case manager and detainees unable to get these addresses including numerous Forms required to present their case. Request made pertaining to issue with to law library responded by Lieutenant always stated they do not have same requested as in the case with Saillant and others.

Detainees are not provided a CD disc to save their legal work and when request made about disc, it has been ignored. Brown, Johnson, Pena and Saillant and others made request that were ignored.

Detainees legals works that is unfinished always get deleted from the computer because there is never any CD or flash drive to save these legals works which put burden on detainees that cause them to restart the process and request for extension of time from the Courts.

Moreover, other detainees can read detainees legal work leave on the computer is dangerous. CCCF posted that a CD disc is available upon request but do not provide same.

CCCF denied ICE detainees their right to get self-help as required by the 2011 Operations Manual ICE Performance-Based National Detention Standards ("PBNDS") .

CCCF do not permit detainees with little or no English proficiency including those speak English and who cannot type or read or have knowledge to prepare their legal work to get self-help from family members or others who may prepare their case and mail it to them.

This is because CCCF do not permit detainees to received such proper prepared materials via mail at the facility.   ICE regulations requires detainees to received the materials under self-help.

Except for mails from the Courts, governments and attorneys, all other mails is sent to a mail processing center which is then scan and sent to read on a tablet. This is not of standard for the Courts and thus violated detainees rights under the pro se client privacy privilege. It is unsure who is responsible for the law library to assist with the legal issue for detainee as required under Smith v. Bound. Moreover, CCCF do not made known to the general population or posted in any Unit the names of Employees and their designated positions.

**(vi)   CCCF phone policies hurt ability to obtain counsel, prevent detainees from communicating with immediate family and violate detainees right to communicate with their attorneys and Diplomatic counselor of their home countries**

Detainees are not permitted to make unmonitored call to their Diplomatic counselor (Embassies). Attorneys and calls to detainees Diplomatic counselor embassies are also made from the Unit phone which warned the detainees that these calls are subject to monitored and recorded. The only way to contact attorney is to add the phone

number to the detainee phone list. The federal statute outline the consequences to individual of placing calls that warned of subjected to monitored and or recorded.

CCCF permit detainees maximum limit of ten phones numbers including families and attorneys on their phone list. Detainees cannot add no more than the ten phone number per CCCF policy. According to CCCF policy any changes to a phone number such as remove and replace with new phone number may only be done four times per year.

This means detainees who is seeking an attorney may take three months to make contact, consult, retain or decide which attorney may be suitable for representation, and if not suitable, the same policy with the phone repeated with time frame to consult with an attorney.

Detainees with family members in the USA and their Country of deportation have hardship and find it impossible to contact immediate family members via telephone who will pay their attorneys fee while trying to obtain counsel at the same time. This hardship occurred because detainees have to delete some immediate family members or others phone numbers who detainees getting self-help from, to add attorneys numbers, then delete those attorneys again numbers to add those numbers that were deleted.

This is unusual hardship where detainees do not have the rights to counsel as those under the Sixth Amendment in criminal proceedings. These cause detainees

detention to be substantially prolonged while CCCF gain its financial benefit in the business of housing ICE detainees, most of who who still end up being deported while being a way from their family at an extended period cause by CCCF policies. Moreover, each phone call is taxed to a sum hidden nor never notify the detainee the amount that will be taxed prior to making the call.

Because of the COVID-19 pandemic, since March of 2020, CCCF provided two 15 minutes phone calls per week which is now lowered to 10 minutes per week since May 2020 that will be ended on June 18th, 2020. Unlike other ICE facilities that gave free phone calls to immigration detainees, CCCF do not.

Brown here have been requesting for legal call since February 2020 that he never received. At one point he received a response that he need to removed phone numbers from the list of ten numbers to add attorney phone numbers.

Detainees paid sale taxed on digital stamps when sending emails and at the same time charged sale taxed to use the service for the internet that run the tablet email. Detainees who received mail by post is free on the tablet and to received picture is mandatory that the family member paid 50 cents plus tax to send each picture. To received picture should not be a mandatory method of payment it should be an option just as the mail by post versus the email.

The same way the mail by post is free, scanned and upload to detainees tablet, the same way detainees should have been able to received pictures by post upload and

scanned to their tablet for free. CCCF policy for detainees to received pictures is financially burdening detainees and their family members. This service is offered by Clinton Subscriber under the Securus Technologies. Moreover detainees cannot sent pictures to family members.

Certain legal correspondents whether represented by counsel or pro se such as civil action and parental custody challenges about child custody that have nothing to do with ICE have been given to ICE by the CCCF staffs.

Detainees have been charged for emails that have been rejected and not sent  is an actual fraud. Moreover detainees who also wrote emails in there native languages and or dialect have been rejected because the CCCF claim  it cannot understand same language or dialect while at the same times detainees are being charged for these emails that never sent which is another scheme.

### (a)    Saillant

Lt Probst have trashed mails going through the post for Saillant numerous times because it is written in Saillant's native French language and Probst do not understand French. Saillant made numerous complaints about these issues which not have been resolve.

### (b)    Hori Xie

Hori Xie is a Chinese and was also charged for emails that was rejected because the email was written in his Chinese dialect. Here CCCF take on a contract with

DHS/ICE and a burden it cannot fulfill under DHS/ICE contract to assist aliens with little or no English proficiency.

Under these circumstances, civil detainees postal outgoing mail should not read because they are not pending any criminal proceeding or high class prisoners serving sentences. Civil detention should be drawn narrowly. Not even in the federal facilities that are classified as low where prisoners serving sentences their outgoing mails are not being read. Civil detention are less than low.

### (c)    Brown

Brown requested for numerous legal calls that was denied and told that he received two free phone calls each week. These free phone calls are on the monitored phone. Brown request for legal calls to his country of consular and attorney during BIU was ignored. Brown also have numerous immediate family and cannot add additional family members nor any attorney numbers due to CCCF phone policy.

### (d)    Johnson

Johnson's request for legal calls were ignored.

### (e)    Roberts

Roberts did not given any legals calls and added his attorney phone number to the his phone list and was pursuing a challenge in order to get release during the peak of the pandemic pertaining to COVID-19. The CCCF block Roberts numbers and others in this

regard because Roberts was using the same attorneys who obtain release for other detainees due to COVID-19.

The attorney for Roberts and others then call CCCF about this issued and talked with Lieutenant Powell at which point the attorney provided Roberts and others a new number. Here, CCCF intentional retaliation while prevent detainees to present a claim to the Court and a constitutional right.

### (f)    Saillant

Saillant was challenging his parental rights for shared custody of his children as a pro se litigant. The children and Youth called CCCF to talk to Saillant pertaining to this litigation. CCCF did not advise nor informed Saillant of this call but instead interfere with this litigation by telling the Children and Youth that Saillant will never be release back into this Country again. Based upon this information provided to the Children and Youth by CCCF staffs , Saillant lost his parental rights for shared custody for his children.

### (g)    Graham

After Graham discovered that his medical record was falsified to reflect that he had being refusing his medication, he sent a email to inform his attorney about the matter to start litigation so he can obtain medication.  CCCF censored this email at 12:53 am on June 6, 2020 by rejecting and restricted this email. In its justification, CCCF

claim that Graham is disrupting the running of the facility. CCCF also charged Graham for this email.

Here, obviously CCCF staffs operating outside of the Medical Dept know what is going on within the Medical Dept and conspired to such act and the government is requires to take immediate action as CCCF is using its authority to hindered ICE detainees form presented a claim to the court.

**(Vii)  CCCF do not follow CDC guidelines and no proper measures never taken to prevent the spread of COVID-19.**

There is no air circulation on G-Unit where these Petitioners are housed. Staffs do not used gloves when handing out items such as razor, mail, commissary, toilet paper and among other things that can spread the virus.

Medical staffs use the same gloves to operate the computer mouse that they use to touch all the different pills that they served to detainees. One gloves touch all the numerous different pills given to detainees with different medical issues. Nothing have been done in this regard to prevent cross contamination to other detainees from other medication.

The only changes made since COVID-19 is the installation of two wall mounted hand sanitizer which cause rash and face masks given to detainees.

A review of video recording if order by this Court upon request which the Petitioners will make accompany this petition will reveal that.

The main G Unit mail hallway only clean once per day at 9:45 PM including the showers and bathroom. There is no sanitizing of things or regular areas that utilize by detainees. General areas such as the correctional officer (CO) counter that utilize frequently by all detainees never get sanitize.

Several detainees such as Brown, Roberts, Saillant and others who requested for COVID-19 test after describing symptoms was either ignored, threatening to send to the hole (BIU) or refused in April of 2020.

Detainees, while leaving the law library on numerous occasions have witness others detainees or prisoners serving sentences from other than G Unit coming into the law library without sanitizing as stated in Moon and Dunn's declaration. Camera review will reveal these facts. The population in CCCF never reduce since the pandemic.

After all, neither CCCF nor ICE cannot declare nor confirmed whether detainees at CCCF contracted COVID-19 because no test never done whatsoever and Reynolds confirmed with detainees that no test will not be done because CCCF is not in the hot spot zone area such as New York.

**(Viii) Complaints / Grievances**

ICE do not have its own complaint grievance box on any Unit. In order for detainees to file complaint to ICE about the facility, or condition of confinement, or any issue regarding deportation and among other things, detainees must use a federal ICE request Form and then deposit that federal Form into CCCF grievance box. These are

then required a CCCF Lieutenant to transferred them to the ICE deposit grievance box in the main prison hallway.

The CCCF lieutenant collect these request made to ICE each night. All these request have been properly vetted by CCCF staff and depend on what the complaint or request to ICE is about, certain request/complaint to ICE never deposited to the only ICE request box in the main hallway especially when Lieutenant (LT) Probst work.

Almost every single detainees complaint that ICE stated they never received their request or complaints and ICE officials have been repeated notified at these issues. ICE also stated that they not receiving most of these request/complaints. Detainees received response on ICE request Forms that ICE said it was not ICE's handwriting.  Detainees spoke to ICE supervisor on this issue the latest on March 15th, 2020.

A request made to a certain CCCF staff may answer by anyone outside the chain of command. Behavior Infraction (BI) issue by CCCF staff that may be use by ICE under INA 241(g) when making a determination or consideration for detainees release are not appealable to any court. This violates detainees constitutional rights because Congress did not permit CCCF to be the final arbitrary of these decision without judicial review by a court.

This is a one step CCCF remedy to the Deputy Warden which end the process. Where administrative remedy play a critical role in making the determination to release a detainee from custody, there must some judicial review by a court.

Brown, Johnson and Saillant also received infraction at CCCF that are not appealable to any court which play a critical role in that ICE may use to make a determination when deciding whether to release a detainee. See 8 C.F.R. 241.4.

CCCF do not response to detainees complaints and or grievances. Detainees lodge numerous complaints and or grievances to the deputy warden and never received any response. Complaints/grievances about denial of medical care forwarded to Reynolds who may then called the detainees to medical and blatedly mislead the detainees about their medication and or treatment requested. Here, the issues never resolved which is the very situation the detainees trying to resolved or purpose for grievances.

Ishmael Kosh filed numerous grievances to the shift commander and Deputy Warden that were never answered pertaining to hygiene and about his religions to the chaplain without any response.

**(ix) Price hoarding of Commissary**

The CCCF commissary is a total practice of price hoarding and is illegal. ICE did not do anything to protect detainees from these price hoarding. The commissary is managed and owned by CCCF. ICE does not afforded its detainees any protection from abuse, overprice and or price hoarding of items under its contracts as those in the BOP under the Attorney General.  ICE detainees are under the Attorney General authority as well as those under the BOP.

Basis items on commissary are excessive and over 400 percents increase or more for some items. These are above prices increase authorized to sell to federal detainees under the authority of the Attorney General. Dental floss sell on the commissary are not proper and no natural food like honey do not sell on the commissary which are in violation of federal laws when housing federal detainees of those under the Attorney General.

Many detainees field grievances pertaining to the price hoarding on commissary and CCCF stated that the prices are within the contract of ICE's agreement.

Some items listed are not what their manufacturer label such as items listed as protein shampoo do not labeled as protein shampoo nor have nothing to do with protein and is misleading detainees. This is illegal.

**(x) Denial of Nutritious balanced meals, denial to feed detainees and discrimination not to provide Muslims with religious diet while providing Jews with religious diet.**

The food served to detainees at CCCF is very inadequate and unbalanced and ICE is aware of this. Extra sweet cakes have been served with every meal to include corn bread and bread is a tactic to up the calories count per meal while destroying detainees health especially those with serious underlying medical condition.

Detainees like Brown with underlying medical conditions where special diet required do not received special diet. Milk only served twice per week, and artificial juices which cause allergic reaction because of the dye ingredient to some detainees like Brown served the remaining 5 or 6 morning during breakfast each week.

The only fruit served to general population which is once per week is apple. When complaint made pertaining to meal the tray taken and in most event never brought back to fed the detainees. The food always cold and menu does not correspond to what is served.

Detainees who have certain medical and or religious diet do not get a balance meal such as substitute for milk, diary, beef and peanut allergies. CCCF Food Services (FS) also sometime reduced the amount of food per serving when it received additional prisoners and detainees.

CCCF provide Jews with religious diet. Muslin request CCCF to provide them with religious diet were denied. Here, CCCF reasons for denied Muslims religious diet was that it is too expensive to feed Muslims with this diet. This is a straight forward discrimination because if Jews fed religious diet them Muslims too must be fed religious diet.  Recall to this Court's attention that Muslim and Jews in the Federal Bureau of Prisons (BOP) have been fed the same religious diet known as the Kosher diet.

### (1)   Brown

Brown who have milk, peanut, diary and beef allergies have not be fed numerous times sine 2019 because CCCF failed to provide a protein substitute for these allergies. These are cruel and unusual punishment and deliberate indifference.

When CCCF food service served milk or diary products, Brown do not get a substitute for the milk or diary product to balanced his meal as there is no milk or diary

substitute. Brown has not been fed numerous times base upon his beef and peanut allergies especially at breakfast time. This result from either, no substitute came on the tray, or the very food to which Brown is allergies have been served to him.

The end result is Brown return the food to staff for correction who then take it to FS that never replace with proper meal nor return the food. These are cruel and unusual punishment and staff acted with deliberate indifference. Brown filed numerous grievances of which most ignored and the issue never resolve.

### (2)   Singh

Similarly, Singh was not fed on certain occasion where he did not received a protein substitute for his religious diet. The end result here, staff acted with deliberate indifference. Singh filed grievance that was never answered.

### (3)   Johnson

Paul Johnson was not fed at least once after was taken to the BIU. He requested to be fed and was told that the kitchen was closed. He later filed grievances that was never answered. Again CCCF acted with deliberate indifference and amount to cruel and unusual punishment.

### (4)   Mohamed kamara

Mohamed Kamara was not fed two in two days during the Ramadan period after fasting. He also filed grievances related to this issue. CCCF also do not have any religious diet for Muslims such as those given on the federal level to Muslims known as

the Kosher diet.  This religious diet he requested is unavailable. All in violation of his religious rights. Again CCCF acted with deliberate indifference.

**(xi) G Unit Dorm condition**

Herein this TRO, all detainees are housed on G Unit and or after being transferred from another Unit after arriving at CCCF. At the time of this TRO, G Unit housed 70 people of which some are ICE detainees, some are county prisoners serving sentences above four years and others are inmates pending criminal sentences.

G Unit is divided into dorms ranging from A-F and housed 12 persons person dorm as of this TRO. Only three tables and seats in the dorm area provided for 12 persons to utilize during lock down.

Lock down hours are from 11 AM – 12 Noon, 5:45 PM to 6:30 PM and from 9:45 PM to 6:30 AM.  Nine out of the twelve detainees do not have seating and table or space during these hours to write letters and eat food. This is extremely overcrowded and also violated the Equal Protection Clause and there is no way a reasonable inspector could have passed inspection to house ICE detainees here in good faith.

There is no sink as required by Pennsylvania License and Inspection Department law and regulations to wash dishes from which detainees eat their food. There are four toilet sinks in the toilet areas. The toilet sinks in the toilet area that are being use to wash face, brush teeth, shaved beard, spit and blow nose in, wash hands after using the toilet is the same sinks CCCF provided  detainees to clean dishes.

Detainees have to be cleaning mucus and among other things before utilizing these sinks to clean their dishes.

Each morning at breakfast CCCF food services provided two 5 gallon bucket of pipe water for 72 people to drink. These bucket always taken out of the Unit at 9:45 PM during cleaning and never refill for the night because FS closed prior to 7 PM. This is inadequate and usually finish prior to 8 PM and not proper to consume because this is the same pipe water that circulate throughout the facility with lot of chemical that cause even skin rashes and itches when use for shower.  Moreover the Pennsylvania Health and safety Code requires running water in these condition of confinement.

Detainees always have to use the toilet sinks to catch water to drink until the next day. The toilet sinks usually have mucus from people spitting and blowing nose is where detainees drink water from around 7 PM or earlier when the two kegs of water finish until 6:30 AM or above this time each day. Moreover detainees use these toilet sinks to to catch water to prepared their food such as to make hot water for tea or to prepared food purchase from commissary.

 DHS/ICE is required to inspect these facilities each year.  Again, this raised question whether the inspection of CCCF was passed in good faith to housed ICE detainees.

There is no fire exit and detainees are housed in a tightly compact space; the dorm areas where detainees beds located never get clean unless a detainee take it up on

himself and clean that area; Top bunks are unsafe to sleep because there is no support to protect a detainee from falling off on either side during sleeping and detainees complaint about not able to sleep comfortable because of this issue which also cause mental distress.

Detainees have complaint numerous times about being have to be careful how far they turn on the top bunk when laying down unless they may fall off on either side (this is dangerous); There is no space to put detainees clothes; detainees only given a small bin to put clothes, legal works, their commissary, dishes, and among other things. This is inadequate.

Spacing overall is less than 33 Square Feet (SQ FF) per person while the Supreme Court state it must be 70 SQ Ft per person. The unit is not within the standard to housed those in civil detention. Whether the unit is at its capacity or close to its capacity, there is never enough table space for everyone to sit and eat during meal serving in the general eating area and there are only four shower for 70 people and four toilet sinks. The Unit was never designed to housed this many people.

When contractor came in the facility to do work, drilling and making noise and causing dust, detainees are still in the dorms. These noise affect detainees and dust from these walls may have asbestos which may cause severe health conditions.

Some detainees like Saillant have to put their dishes on the floor due to lack of space because if put on either of the three available table in the dorm they will be trow

away by the Lieutenant Probst who issued warning not to put anything on those table because of the lack of table. Detainees have complaint about constant illumination and frigid temperature. Some of the CO's such as Terezski and Turner who work G Unit always punishing the detainees by turning on more lights.

Some detainees bunks are very close to the tables in the main hallways and under constant illumination. Detainees who housed on top bunks that are this close, if fall off while land on the table. Moreover constant illumination cause physiological effect.

There is no personal space as required by law except the bunk detainees sleep on; the unit is overcrowding, detainees on top bunk suffered from emotional stress and complaint not able to sleep properly because each time they turn they feel as if they going to fall off on either side because there is not support; and there is no fresh air coming into the unit; proper sanitize and cleaning needed to eliminate the odor in the toilet that cause the sent to leave in detainees clothes after using the toilet.

**(xii)   This Court requires to construe this TRO liberally**

Pro se plaintiffs are not held to as high pleading standard as other litigants, and pro se pleadings must be construed liberally. Jiricko v. Bennett, Bricklin & Satlzburg, LLP., E.D. Pa. May 07, 2004 321 F.Supp.2d 636 2004 WL 1053002. Pro se filings must be liberally construed. Liggon-Redding v. Estate of Sugarman., October 04, 2011 659 F.3d 258 2011 WL 4552470.

## IV.   ARGUMENT

**A.**   CCCF failed to meet the standard required by the constitution to provide detention for this Court to order immediate inspection and give CCCF seven days to comply while finding detainees condition of confinement unconstitutional, and in the event, terminate CCCF contract with DHS/ICE where CCCF failed to comply with this Court's order.

The Due Process Clause of the Fifth Amendment assures the humane treatment of noncitizens in detention. Lynch v. Cannatella, 810 F.2d 1363, 1373-74 (5th Cir. 1987). Courts have held that deportable noncitizens enjoy a range of due process rights, including the following: the right to notice of ability to apply for asylum; the right to be represented by counsel; the right to challenge transfers to other detention facilities that interfere with the right to counsel; the right to medically adequate treatment; the right to access free legal services lists; the right to self-help and other legal reference materials; the right to access to courts, the right to communicate with diplomatic officers of their home countries; the right to bond hearings when detention becomes prolonged; access to health care; access to visitors and access to telephones calls. U.S. Immigration & Customs Enforcement (ICE), U.S. Dep't of Homeland Security, 2011 Operations manual ICE Performance-based National Detention Standards. See www.ice.gov.   See i.e., Orantes-Hernandez v. Thornburg, 919 F. 549, 554 (9th Cir. 1990); Orantes-Hernandez v. Meese, 658 F. Supp. 1488 (C.D. Cal. 1988); and, Haitian Centers Council v. Sale, 823 F. Supp. 1028, 1043 (E.D.N.Y. 1993).

The government have established the above detention standards and among other things, providing detained noncitizens with such rights.  The 2011 Operations Manual ICE Performance-Based National Detention Standards ("PBNDS") and National Detention Standards  (NDS) specified the conditions appropriate for detainees. These includes, medical and mental health services, increase access to legal services and religious opportunities, food service, improved communication with detainees with no or limited English proficiency, improved process for reporting and responding to complaints, and increase recreation and visitation.

The PBNDS apply to SPCs, CDFs, and IGSA facilities holding detainees for longer than seventy-two hours such as CCCF at issue here. The regulations requires that whenever a noncitizen is detained in a facility other than DHS Service Processing Center, the facility contracting with DHS must have been approved by the DHS's Jail Inspection Program or must be performing such services under contract in compliance with the Standard Statement of Work for Contract Detention Facilities. See 8 C.F.R.§ 235.3(e).

(e) Detention in non-Service facility. Whenever an alien is taken into Service custody and detained at a facility other than at a Service Processing Center, the public or private entities contracted to perform such service shall have been approved for such use by the Service's Jail Inspection Program or shall be performing such service under contract in compliance with the Standard Statement of Work for Contract Detention Facilities. Both programs are administered by the Detention and Deportation section having jurisdiction over the alien's place of detention. Under no circumstances shall an alien be detained in facilities not meeting the four mandatory criteria for usage. These are:
(1) 24–Hour supervision,

(2) Conformance with safety and emergency codes,

(3) Food service, and

(4) Availability of emergency medical care.

(f) Privilege of communication. The mandatory notification requirements of consular and diplomatic officers pursuant to § 236.1(e) of this chapter apply when an inadmissible alien is detained for removal proceedings, including for purpose of conducting the credible fear determination.

Under no circumstances can CCCF past inspection without bad faith by inspector because CCCF is totally not in compliance with The 2011 Operations Manual ICE Performance-Based National Detention Standards ("PBNDS")

Prison officials are obligated to provide inmates with basis services such as clothes, beds and facilities for personal hygiene and exercise. Failure to provide these constitute cruel and unusual punishment in violation of the eight amendment.  Anderson v. Coughlin, 575 F.2d 33 (2nd Cir. 1985).

Here, CCCF do not provide: hygiene as requires by the regulations and instruct detainees to buy these from commissary while confiscate hygiene permitted from another facility by ICC, proper clothes, hair cut/free barber service and among other things constitute cruel and unusual punishment.

Inmates are entitle to reasonably adequate sanitation, personal hygiene and laundry privileges, particularly over a lengthy course of time. Howars v. Adkison, 887 F.2d 134 (8th Cir. 1989).

Detainees are not permitted to practice personal hygiene nor do their laundry properly for more than 6 months and hot water spilling out of washing machine when

detainees open the machine to retrieve their laundry infringes upon their constitutional rights.

These further threaten the health and physical well-being of detainees. See Fambro v. Fulton County, 713 F.Supp. 1426 (N.D. Ga. 1989) (condition must involve an unnecessary infliction of pain or be grossly disproportionate to the severity of the crime).

These deprivation result are not reasonably related to a legitimate governmental purpose but are arbitrary and purposeless which is unconstitutional punishment because CCCF and ICE aware of these at least since December 2019 and ignored detainees complaint about same. See Bell v. Wolfish, 441 U.S. 520 (1979); and Campbell v. McGruder, 580 F.2d 521. 532 (D.C. Cir. 1978) (the constitutionality of conditions may be dependent upon the length of incarceration; conditions that might be tolerable for ten days might be unacceptable if imposed for a month or longer).

Nurse Reynolds, ICE and CCCF administration in charged of detainees disregard the laws that detainees are in custody and are unable to seek medical assistance on their own. Reynolds, ICE and CCCF is under the duty to provide adequate medical treatment. See Estelle v. Gamble, 429 U.S. 97 (1976).These duty extends detainees in ICE detention as here.

Nurse Reynolds, ICE and CCCF action rise to a shown by systematic deficiencies in personnel, equipment and procedures for addressing detainees medical needs, intend to harm detainees, refused to treat detainees after serious injuries or illness was brought to their attention, restrict access to prison doctors and refuse to comply with prescribed medication and treatment. See Lewis v Cooper, 771 F.2d 334 (7th Cir. 1985); Williams v. Edwards, 547 F.2d 1206 (5th Cir. 1977); and Dewell v. Lawson, 489 F.2d 887 (10th Cir. 1974). CCCF block emails to attorneys from detainees to obtain life threatening medication violated constitutional rights.

These includes the failure to provide detainees here with the prescribed medication, provide ineffective or counter-productive medication, failure to provide pain medication, failure to treat serious back condition, failure to address serious vision problem and among other things described in the statement of facts herein. See Estelle v. Gamble, 429 U.S. 97 (1976) (Prisoners may bring action against prison doctors who intend to harm them or who refuse to treat them after serious injury or illness was brought to their attention).

CCCF housed ICE detainees with prisoners who are serving sentences for up to more than four years. Inmates who are pending criminal proceedings and those who serving prison sentences are also classified as detainees on the Forms provided such as for grievances, sick calls, intake and discharge and among other things is misleading and

a ruse to housed prisoners with ICE civil detainees and violated CCCF contractual agreement with DHS/ICE and or the regulation governing civil detainees.

The First Amendment to the United States Constitution states in part that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof....".

Congress passed the Religious Land Use and Institutionalized Persons Act (RLUIPA) to afford inmates greater protection of religious exercise than what the Constitution itself affords. U.S.C.A. Const.Amend. 1.

Restrictions on prisoners' access to "religious opportunities," whether group services, chapel visits, or meetings with religious advisers, must be found reasonable in light of four factors: (1) whether there is a valid, rational connection between the regulation and a legitimate government interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) whether accommodation of the asserted constitutional right would have a significant impact on guards and other inmates; and (4) whether ready alternatives are absent. U.S.C.A. Const.Amend. 1.

CCCF is benefited and gaining financial interest in the business of providing a service to housed ICE detainees while knowing it is incapable of providing a diverse groups of Religious opportunities to detainees from every continent on the planet.

Here, CCCF cannot provide any legitimate interest put forward to justify why it does not provide religious access or opportunities to Rastafarian, Hindu and Buddhist and among others minority religious group and does not provide no alternative means for exercising these religions.

This is a straight forward violation of these religious groups First Amendment Rights to the United States Constitution and this Court is required to stop CCCF and ICE in their disobeying of the laws pertaining to these religious groups by issue on immediate inspection, give CCCF seven days to comply with what civil immigration detainees regulations requires and or terminate CCCF contract with DHS/ICE where it cannot meet the Standards because CCCF have been in the business of housing immigration detainees for many years.

CCCF is not in compliance with the contract by DHS/ICE pertaining to law library and self-help. These violation cause many civil detainees herein this TRO detention to be substantially prolonged because of CCCF noncompliance with these regulation protected by detainees constitutional rights. Here, detainees have being provided inadequate law library and denied access to courts and among other things. See Bounds v. Smith, 430 U.S. 817 (1977); and Fifth Amendment U.S. Const.

CCCF phone policy violate the right to communicate with family member per DHS/ICE regulations access to telephone and it also substantially hurt detainees ability

to obtain counsel and cause their detention to be substantially prolonged in violation of their Fifth Amendment right to counsel.

A prisoner has an absolute right under the Due Process Clause of the Fifth and Fourteen Amendments to be free access to the courts to protest the reasons for, or conditions of incarceration. See Procunier v. Martinez, 416 U.S. 396 (1974).

This right is protected by the first amendment right to petition for redress of grievances and includes the vindication or rights unrelated to the incarceration. United States v. Janis, 820 F. Supp. 512 (S.D. Cal. 1992), aff'd, 46 F.3d 1147 (9th Cir.0, cert. Denied 516 U.S. 860 (1995). CCCF failed to comply with these pertaining to grievances.

The element for retaliation claim are (1) prison officials acting under the color of state law; and (2) intentional retaliation for exercise of a constitutionally protected activity. See Woods v. Smith, 60 F.3d 1161(5th Cir. 1995).

Here, CCCF removed Margaryan from G Unit and housed him on "I" Unit that housed prisoners serving sentences for sex offenses was in retaliation for a habeas he filed and served the warden with a copy.

LT Gate interview Margarygan about this 28 USC 2241 habeas petition and after his custody status was upgraded and  LT Powell later  warned and threaten Margaryan

not to file anymore habeas petition unless similar action will be taken.  Margaryan also argue that ICE Deportation Officer Amanda Campbell was instrumental in this matter.

In addition, CCCF block Graham from sending email to his attorney about life threatening medication is intentional hindering and retaliation couple with Roberts and others who attorney numbers was block violates constitutional rights. Here, this Court must find that CCCF staffs have no immunity because they infringes upon detainees constitutional rights.

The conditions on G Unit amount to extreme punishment and violate constitutional rights. Detainees on top bunks have no support and may fall off on either side when turning and have distress and fear while sleeping. These cause mental issues and not able to sleep violated constitutional rights and are cruel and unusual punishment. Moreover, CCCF do not comply with the Center for Disease Control (CDC) or health officials guidelines to prevent the spread of COVID-19.

CCCF abridge detainees rights with its action toward detainees when it ignored and do not address grievances including those it prevented detainees from presented to ICE officials. See Procunier v. Martinez, 416 U.S. 396 (1974).

Unlike those under the Attorney General in the BOP where commissary are restricted to certain prices control and to ensure that certain health food are sold on commissary, ICE do not afforded its detainees any protection from CCCF price hoarding

and to ensure detainees have access to healthy and or natural food such as honey and juices and among other healthy food. Detainees cannot get proper dental floss to purchase from CCCF commissary and medical refused to supplied detainees with proper dental floss.

The petitioners have requested this Court to decide whether ICE should afford its detainees to have access to natural food on commissary and afforded its detainees protection from CCCF price hoarding of items sold to ICE detainees.

CCCF served three meals per day and twenty one meals per week and none of them meet the standard required as a nutritious balanced meal. The meals are cold, always consist of cakes which is sugar and high in calories which cause obesity, starch and less protein to balance out the calories to present a proper nutritious balanced diet. This violate detainees constitutional rights. See Landman v. Royster, 333 F. Supp. 621 (1971).

Moreover, detainees like Singh here with religious diet needs and detainees like Brown with health issues who cannot eat certain foods must be provided with alternative meals. See Johnson v. Harris, 479 F. Supp. 333 (S.D.N.Y. 1977) (brittle diabetic must be provided special diet or transferred to prison which can provide it).

The end result here, CCCF is in the business of operating a county prison and not a ICE detention facility and subject ICE detainees to the same condition of confinement,

restrictions and punishments as those serving sentences for their crimes housed together with ICE detainees.  Here, ICE detainees are not treated as civil which violate CCCF contract as CCCF was limited to the scope within the agreement to housed ICE detainees. Permitting detainees to wash dishes in the toilet areas in the toilet sinks and drink water from those same sinks and not provide adequate drinking water couple with not seating and inadequate spacing is extremely super excessive condition of confinement.

Treatment toward detainees are cruel and unusual punishment and stripped immigration detainees of their narrow constitutional rights.  CCCF is not operating within the laws and instead operating above the law. These are deliberate deprivation that has been ongoing for many years that are known by ICE and CCCF that they ignored.

This Court is requires to find the detainees herein constitutional rights have being violated by CCCF under the condition of confinement as a ICE detention facility under contract not in compliance with the Standard Statement of Work for Contract Detention facilities, order immediate inspection, and, or thereafter terminate the contract for same constitutional violations where CCCF failed to fix these problem within seven days.

**(B)   Should the defendants object to the condition of confinement, the petitioners request this court to certified this issue as a class of plaintiffs**

Should the defendants challenge this petition that this Court found otherwise than a constitutional violation and or object to immediate inspection of CCCF as the plaintiffs argue here, the plaintiffs herein request this Honorable Court to certified issues related to the condition of confinement claim as a class of plaintiff, challenging conditions of detention in ICE detention facility. See Doe v. Johnson, No. CV 15-00250-TUC-DCB (D. Ariz. Jan. 11, 2016) (certified a class of plaintiffs challenging condition of detention in U.S. Customs and Border Protection (CBP) facilities, including allegations of frigid temperatures, overcrowding, lack of beds and blankets, constant illumination, and lack of adequate food, water, health care, and sanitary supplies); and Lyon v. ICE, 300 F.R.D. 628, 643 (N.D. Cal. 2014) (class of plaintiffs who alleged that lack of access to telephones in ICE detention facilities hurt their ability to retain counsel and substantially prolonged their incarceration).

**(C)   Plaintiffs seek TRO requiring this Court to order the responsible parties to take the following action and provide the following below within seven days from the date of this Court's order:**

1.     DHS/ICE jail inspection to do immediate inspection on G Unit within two days and submit report and or affidavit to this Court and served the Plaintiffs with same on the issue herein for this Court to decide whether the grant mandatory TRO;

2.     Provide ICE detainees with proper soap, deodorant, shampoo and among other personal hygiene each week;

3.     Provide new clothes;
4.     Do not housed county prisoners serving sentences and county detainees with civil immigration detainees;

5.      Provide proper dental floss to detainees and provide Q-Tips or sell proper dental floss on commissary and or start selling Q-Tips on Commissary;

6.      Provide proper cleaning materials to eradicate the germs flies and strong odor in the toilet areas;

7.      Provide proper steps that do not permit detainees feet to touch bottom bunk mattress when other detainees climbing to top bunk$_{)}^{:}$

8       Provide health care and medication for those listed in this TRO as complained with medical condition and treat detainees with proper medication that was prescribed prior to arrival at CCCF;

9.      Remove falsified information from detainees medical record such as where it falsified that detainees refused medication and among other things to protect detainees from future adverse factors such as in the court of law where it would appear as if they gave up a right;

10.     Change policy where detainees only received two aspirin for treatment and have to made more sick call request for same ongoing health issue;

11.     Treat detainees who were given ineffective and counter effective medication;

12.     Provide detainees those of minority religious groups or of all diverse religions accommodation to practice their religious faith that housed at CCCF;

13.     Permit detainees to received self-help and other reference materials from family members and other sources of non attorney pro se or self-help;

14.     Provide proper copies to detainees to present their case to the courts;

15.     Provide detainees with CD disc to save their legal work;

16.     Permit each detainees with at least 15 hours per week in the law library;

17.     Designate a librarian to assist detainees as required under Smith v. Bound;

18.     Provide detainees with unmonitored call to communicate with Diplomatic office of their home countries;

19.     Provide detainees with access to telephone to contact attorneys that does not warned detainees that calls are monitored and recording;

20.   Change phone policy that permit only ten phone numbers in order for detainees not to removed attorneys phone numbers to add family members phone number and vis versa which also hindering the process to obtain counsel that cause detention to be substantially prolonged when detainees cannot speak to family members to arrange payment to hire counsel;

21.   Change phone policies that permit detainees to change and add phone number only four times per year and make it mandatory that detainees get up to one hour of free phone call to family member each week as the regulation provided at other ICE detention facility;

22.   Permit detainees access to telephone during Behavior Infraction (BI) to contact family members and Diplomatic counselor of detainees countries;

23.   Stop charging detainees for rejected email that never sent;

24.   Permit detainees to contact family members via email in their own languages and or dialect and by post without being rejected and or trashed;

25.   Permit detainees to received materials pertaining to child custody, diverse, marriage and other civil related and legal pro se litigation;

26.   Comply with CDC guideline to prevent the spread of COVID-19 and test detainees who requested for COVID-19 testing;

27.   Install ICE grievances box in each Unit to prevent third party inference such as CCCF staff and afforded detainees rights to filed request and complaints directly to ICE;
28.   Resolve CCCF grievances that never resolve and those pending and those return without response and honor detainees grievances;

29.   Permit detainees to appeal infraction to federal courts that play a critical role in making a determination by ICE to release detainees under 8 CFR 241;

30.   Afford detainees protection from price hoarding on commissary and sell health food and personal hygiene CCCF do not provide such as Q-Tips to clean ears to avoid ears infection;

31.   Provide adequate food with adequate protein value recommended by for human nutrition value;

32.    Provide substitute for milk and diary allergies and substitute for those who cannot eat certain food because of religious and health purposes and special diet for those with underlying medical condition and religion diet for Muslim;

33.    Provide religious diet for Muslim;

34.    Provide daily varieties of fresh fruit;

35.    Provide table and seating for all 12 persons to utilize at once in the dorm areas during lock down so each person can sit without have to interrupt another person to utilize same table which always cause violence and the avoid violence over these shortages of seating and tables;

36.    Provide seating and table in the general eating area for all 72 persons to eat to avoid violence over shortages of tables and seating;

38.    Provide sinks to wash dishes as required by the Pennsylvania License and Inspections and Department of Health and safety Code;

39.    Provide support for top bunks to avoid detainees from falling off on either side;

40.    Provide 24/7 running drinking water as required by law and per health and safety code for prison/detention setting such as water fountain on G-Unit;

41.    Instruct correctional officers to assist detainees who fell to the floor caused by medical issue;

42.    Provide proper cleaning materials to removed odor and germs flies from toilet;

43.    Provide fire exit on G Unit;

44.    Move the lights away from the sleeping area the lights that stay on at night;

45.    Remove beds so we get over 70 sq footage, rather than the 32 sq foot in Unit G;

46.    Remove hidden taxes charged to detainees on phones, stamps and other items and or services;

47.    Remove service charges for using the tablets to send email while charging one stamp plus hidden tax to send each email, while also charged detainees family $3 plus hidden tax to add this same money to detainees phone account that use to purchase detainee's stamp which is double taxation, and, at the same time charged detainees family members $3 plus hidden tax to set up the email services;

48.   Remove charge that cost each time detainees transfer money from their account to to use the phone while at the same time charging family members $10 per transaction to add money to detainees account which is a financial burden and hardship on detainees to place call;

49.   Provide ventilation in G-Unit;

50.   Treat civil immigration detainees detention as one hundred percent civil as defined by the DHS/ICE Regulations and the U.S. Supreme Court; and,

51.   ICE to take action to address the retaliation that occurred and CCCF hindrance of civil immigration detainees that filed habeas and to contact their attorneys to present their claims in federal court.

### (D)   Subject Matter Jurisdiction

Plaintiffs challenge ICE and CCCF procedures and policies relating to the conditions of the civil immigrant detainees' pre-hearing confinement. Plaintiffs request a TRO to protect each immigrant civil detainee's right to protect their First, Fifth, Eight and Fourteen Amendment rights and those that DHS/ICE regulations permit.

### (E)   Likelihood of Success on the Merits

Plaintiffs have shown a likelihood of success on the merits of their third claim, which alleges a violation of the Substantive and procedural Due Process Clause of the Fifth Amendment, including violation of the First, Eight and Fourteen Amendment rights. The Court need not decide at this stage of the litigation whether Plaintiffs have shown a likelihood of success on the merits regarding their other constitutional and statutory claims. Bell v. Wolfish.

The Due Process Clause of the Fifth Amendment guarantees to aliens the right to counsel at their own expense for immigration hearings. *See, e.g., Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004) ("Although there is no *Sixth Amendment* right to counsel in an immigration hearing, Congress has recognized it among the rights stemming from the *Fifth Amendment* guarantee of due process that adhere to individuals that are subject to removal hearings.") (emphasis added); *Colindres–Aguilar v. INS*, 819 F.2d 259, 261 n.1 (9th Cir. 1987) ("Petitioner's right to counsel ... is a right protected by the fifth amendment due process requirement of a full and fair hearing.").

The Ninth Circuit has upheld mandatory injunctions designed to remedy government practices when the "cumulative effect" of such practices "was to prevent aliens from contacting counsel and receiving any legal advice." *Orantes–Hernandez v. Thornburgh*, 919 F.2d 549, 565 (9th Cir. 1990). Here, Plaintiffs have shown a likelihood of success on the merits of their Fifth Amendment claims.

The U.S. Immigration & Customs Enforcement (ICE), U.S. Dep't of Homeland Security, 2011 Operations manual ICE Performance-based National Detention Standards give civil immigration detainees here a range of rights. See www.ice.gov; See also i.e., Orantes-Hernandez v. Thornburg, 919 F. 549, 554 (9th Cir. 1990); Orantes-Hernandez v. Meese, 658 F. Supp. 1488 (C.D. Cal. 1988); and, Haitian Centers Council v. Sale, 823 F. Supp. 1028, 1043 (E.D.N.Y. 1993).

These rights fall with various constitutional rights protected under the First, Fifth, Eight and Fourteen Amendment within the 2011 Operations Manual ICE Performance-Based National Detention Standards ("PBNDS") and National Detention Standards (NDS) specified the conditions appropriate for detainees. CCCF violated all of these rights afforded to civil immigration detainees afforded by ICE regulations and the Constitution.  Here, Plaintiffs have shown a likelihood of success on the merits.

**(F)   Irreparable Harm, Equities and Public Interest**

Plaintiffs also have made a compelling demonstration that they are likely to suffer immediate irreparable harm in the absence of emergency relief. Defendants are likely violating the immigrant detainees' constitutional rights, and such violations "unquestionably constitute[ ] irreparable injury."

The harms likely to arise from the denial of access to legal representation in the context of asylum applications are particularly, to retain counsel, proper hygiene, inadequate and denial of healthcare and or denial of access to medical, inadequate seating and table that cause violence, inadequate food and lack of drinking water, failed to fed detainees, discrimination to provide Muslims with religious diet while provide Jews with religious diet, inadequate law library and denial of access to court, mental distress cause from sleeping on top bunk with supports which cause fear from falling, denial of self-help reference material, and among other things.

The equities in this case tip sharply in favor of emergency relief. Plaintiffs request only that DHS/ICE and CCCF actually provide the same degree that their own regulations purport to guarantee. Defendants cannot show that the requested TRO will pose any undue burden on their time, resources, or personal. Moreover, such burden on Defendants is more than justified by the need to ensure the fulfillment of Plaintiff's constitutional rights and prevent improper denial of their constitutional rights. Finally, it is always in the public interest to prevent the violation of a party constitutional rights.

### (G) Bond

Rule 65 of the Federal Rules of Civil Procedure directs that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

This Court have discretion as to the amount of security and may even dispense with the security requirement altogether. *See Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (" 'Rule 65(c) invests the district court with discretion as to the amount of security required, *if any.*' " (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

Plaintiffs request this Court to considered the relative hardships and the likelihood of success on the merits and concludes that to require any security in this case would be unjust and to waives the requirement of a bond.

## V.   CONCLUSION

Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction is to be GRANTED as set forth in the above.

Dated: June 4, 2020                              Signatures:

## CERTIFICATE OF SERVICE

I certify that all parties were served as addressed on date below to:

Office of the Clerk
United States District Court
U.S. Courthouse
Middle District of Pennsylvania
228 Walnut Street
P.O. Box 983
Harrisburg, PA 17108

Angela Hoover, Warden
Clinton County Correctional Facility
58 Pine Mountain Road
Mc Elhattan, PA 17748

United States Attorney's Office
Middle District of Pennsylvania
Federal Building
Suite 220
228 Walnut Street
Harrisburg, PA 17108

Office of the United States Attorney's Office
District of Columbia
555 4th Street, NW
Washington, DC 20530

Lieutenant Gates
Clinton County Correctional Facility
58 Pine Mountain Road
Mc Elhattan, PA 17748

Lieutenant Powell
Clinton County Correctional Facility
58 Pine Mountain Road
Mc Elhattan, PA 17748

Lieutenant Probst
Clinton County Correctional Facility
58 Pine Mountain Road
Mc Elhattan, PA 17748

Dated: June 4, 2010                                    Signatures

# Signatures

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

AleJandro Acevedo *(handwritten)* 100005680

Garty Togbasi *(handwritten)* 100005750

---

**Daniel Brown** ~~Daniel Brown~~                     A#-074-992-221;
**Vu Tuan, A#-060-613-821;**
**Son Lee,**
**Patel Nisarg,**                              A#-061-544-218
**Jhensy Saillant,** *(signature)*             A#-062-280-757
**Cipriano Rodriguez,** *(signature)*          A#-090-766-958
**Pena Jose,** *(signature)*                   A#-034-205-798
**Gilbert Grullom,** *(signature)*             A#-090 766 958
**Amjad Mohammed,** *(signature)*              A#-099-384-130
**Hooru Xie,** Haoru Xie                       #-100-005-669
**Abel Helb,** *(signature)*                   #-100-005-267
**Darius Kilby,** *(signature)*                A#-100-005-473
**Ofori Xentumi Jeremy,** *(signature)*        A#-096-672-758
**Navin Singh,** Navin Singh                   #-100-003-700
**Paul Johnson,**                              #-100-003-706
**Ajarhi Roberts,** *(signature)*              A#-100-005-615
**Franciszek Bystron,** *(signature)*          #-097-615-784
**Patel Bharatkumar** *(signature)*            #-100-005-848
**Levon Margaryan** *(signature)*              #-100-004-645
**Karireddy BharathA**                         #-100-005-834
**Gary Lall** Gary Lall *(signature)*          #-100-005-819
**Ishmael Kosh** *(signature)*                 #-100-005-842
**Kelechi James** *(signature)*                #-100-005-663
**George Graham** *(signature)*                #-100-005-747
**Anthony Wilson** *(signature)*               #-100-005-522
**Olalekan Abifarin** *(signature)*            #-100-005-764
**Mohamed Kamara** *(signature)*               #-100-005-654
**Van H. Nguyen** *(signature)*                A#-042-363-518
**Herrow Yahye** *(signature)*                 #-100-005-177
**Jaber Hammouda** *(signature)*               #-100-005-796
**Jose Ismael Dilone Lyon Rodriguez**          #-100-005-702

Gorbatenko Alex *(signature)*       # 100005740

FIAZ KHAN *(signature)*          100004644

Cheng Zi                    100005768

Yang Hong *(signature)*     100005794

Deron Joe   100005650

1

Emil SANCHEZ 100005634



U.S. POSTAGE PAID
FCM LG ENV
MCELHATTAN, PA
17748
JUN 16, 20
AMOUNT
$6.95
R2305K137235-03

17108

1000

Office of the Clerk
U.S. District Court M.D.P.A
228 Walnut Street
P.O. Box 983
Harrisburg, PA 17108

RECEIVED
HARRISBURG, PA
JUN 19 2020
PER _____ DEPUTY CLERK

INMATE MAIL
THIS CORRESPONDENCE IS FROM A
COUNTY CORRECTIONAL FACILITY
AND THE SENDER IS AN INMATE.
THE CONTENTS HAVE NOT BEEN
EVALUATED. CLINTON COUNTY
CORRECTIONAL FACILITY IS NOT
RESPONSIBLE FOR THE CONTENTS
OR FOR DEBTS INCURRED.

INMATE NAME Daniel Brown
CLINTON COUNTY
CORRECTIONAL FACILITY ID 6605342
P.O. BOX 419
MCELHATTAN, PA 17748

7019 0822 0000 2295 4464



CERTIFIED MAIL
PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE